Case number 18-1392 and 18-1395, Neal Cohen et al. v. Jaffe Raitt Heuer and Weiss PC et al. Oral argument not to exceed 15 minutes per side. Mr. Garish, for the appellants, cross off a lease when ready. Thank you and may it please the court, Jeff Garish on behalf of defendants. I'd like to reserve five minutes for rebuttal if I could. Okay. This case presents a truly rudimentary issue of attorney malpractice and it is this. Can a lawyer be deemed to have an attorney-client relationship complete with all its attendant duties of zealous advocacy, confidentiality, loyalty, fiduciary, and the duty to keep the client informed with an entity that it doesn't know about? And we submit that the answer is and has to be no. And the reason it has to be no is because an attorney-client relationship is and must be based in contract. There has to be a meeting of the minds and there cannot be a meeting of the... Did your client write a contract once they contacted you and send it to them? I don't recall that. A contract for the attorney-client relationship? Yes. No, I don't believe there was. So this was an oral agreement. I think that's correct. And they said we want to know about essentially me and my companies, right? Whether I, or there were two of them, and our companies will be liable. Yeah, you're referring, I think, Judge Tappar, to the April 4, 2013 email. And it used the word we, we've, and it used the word we or we've seven times, which clearly referred to Cohen, Chafee, and Coby at most, and not to the other assets and companies which were separately identified in that email. If they would have sued you for breach of fiduciary duty, would it have been fine? If they being who? The company. SSL? Yeah. Well, they didn't have, they couldn't sue us for attorney-client malpractice because they're not our client. I asked a different question, right? Right. I understand, Your Honor. If there can be a fiduciary duty owed by a lawyer to someone that's not his client, then I could. But I'm not sure I know the answer to that, Your Honor. I thought one of your clients conceded that he owed a fiduciary duty. What he conceded, and it's on page 18 of the transcript of his testimony, where he said he was asked several questions, do you owe a duty to us and to our companies? And he said yes. But this is important to keep in mind, and I think, Judge, Thapar, you're right. He would have been hinting at most at a fiduciary duty, not an attorney-client malpractice duty. Because if you look at his testimony on page 15, he was asked, what did you think they meant with this email? And he said, he was asked, what does other assets slash companies at risk, what does that mean? What is your understanding? And he said he thought it meant Kobe Capital and all of its subsidiaries. He didn't understand assets and other companies to mean anything other than the guys on the email and Kobe's subsidiaries. He didn't even know of SSL's existence. And there can't possibly be a meeting of the mind with a company you don't know about. And their argument has never been very seriously made, I wouldn't think, that there was an actual meeting of the minds between Weiss and SSL, which they didn't know about. Their only argument in the trial court's ruling was this, that because Weiss, in carrying out his duties owed to Chafee or Cohen or Kobe, failed to find SSL, therefore we're going to say that a client relationship springs into existence between Weiss and SSL. What if I said I wanted you to protect me and my family, and you didn't do a good job, like the firm in this case, and then my son, whose name you didn't know, sues you? Could you claim you don't have an attorney-client relationship with him? That would certainly be tougher, which I'm sure is why you asked. You just said the rule is if you don't know the person, you're not a liar. If he knows who his family is, the members of his family, then that's a different situation than if it's a reference to something more amorphous, where it's incorporating an entity that he does not. If he knows there's two kids and didn't really know about the third kid away in college, he's not representing that person in Judge Tappar's example, it would seem like he would be. Or maybe it's a jury issue. It's kind of up to the law firm to clear that up with a contract, right? But my point is, if he's in a client relationship with the person who's sending the email, in this case Cohen or Chafee, and he doesn't clear it up, and he doesn't know about SSL, it can be a breach of the duty owed to Kobe and Chafee and Cohen, but it doesn't create an attorney-client relationship with SSL. Their argument has always just been that there's an implied contract, and it's implied because he didn't find them in carrying out his duties owed to Cohen and Chafee. But that's not a basis for an implication in any way, shape, or form. That may be a basis for an imputation. What the judge essentially did is imputed knowledge to Weiss that we know he didn't have. We know that he didn't know about SSL. That's undisputed. And because he didn't know about SSL, to suggest that we can pretend he knew about it, but I assume that means he didn't know the name of it and didn't know even that it existed, like in my example about the kid away from college. But he didn't... If somebody's got to clear this stuff up, or you're just going to... But the duty to clear it up might be owed to the clients that he has, that do exist. But they said we want to make sure, I'm summarizing, that neither we nor our companies are held liable for this. Doesn't the lawyer have an obligation to find out who he's talking about? He might have an obligation to Cohen to find that out, and that is part of the breach of the duty owed to Cohen. And he was held liable against Cohen, and we haven't challenged that on appeal. But the breach of the duty owed to Cohen can't be deemed to somehow create a relationship with a client that he doesn't know exists because there can't be a meeting of the minds. Back to the college kid gone away, yes or no duty? I don't think so, but I'm not sure. I can see that it's closer because there's more likely a meeting of the mind. The lawyer knows about the family. The lawyer knows that you have a family, and they're real people, and he knows of them. This is a different situation where there's an entity that has exposure that he doesn't know about because he doesn't know they exist. And if they had told him about SSL, he would have been able to fix it. Then he would have known about this entity that's not part of the subsidiaries of COBE. It's a sister company. So here there's an oral contract. The judge, there's some evidence from which a jury could conclude that you represented them, at least the email and other things. Why not just let it go to a jury like the judge did? Because there isn't evidence for them to conclude that there's a contractual relationship with SSL. There's no evidence of that. There's no evidence that he knew they existed. Was the jury instructed on this issue? They were given generic instructions on the attorney-client relationship. Do you object to those instructions? I don't believe so. So we can assume that they were properly instructed. I think we're stuck with that, yes. I think that's right. But the key is there can't be, there's no act. Actually, the judge never should have instructed on those. Well, we wanted the judge to give more detailed instructions that he rejected. I don't think we've appealed that. Usually you have a crisper way of presenting an issue like that to the court of appeals if you contend that the instructions are wrong. When the instructions are right, we've got to say that the jury couldn't possibly reasonably come to that conclusion or whatever the standard is. It's a very deferential standard. Isn't that correct? Yeah, and we have not challenged the instructions on appeal. You've got to assume that they're properly instructed. And that's fair. But my argument isn't based on a suggestion that they weren't properly instructed. No, I understand that it's not. It's just that it's based on something that gives you a much steeper hurdle to overcome. I don't think, Judge Rodgers, is there any evidence that there was an actual meeting in the minds between Weiss and SSL? And the answer is no, there was none. Nor is there any evidence that it can be implied. It can't be implied because his breach of a duty owed to Cohen didn't do anything that would spring this into existence or give rise to an inference that he did know about SSL. He did know there were companies out there that were owned, right? He assumed that there were companies that they were subsidiaries of COBE. He didn't know there was a sister company out there that had exposure because he was never told that. And he may, you're right, he may have owed a duty to Cohen to find that out, and maybe he breached that duty to Cohen. But that can't create an attorney-client relationship. I understand, but now I'm confused. You say the companies that are referred to in the email, albeit you say for a different purpose, but they are referred to. We don't want liability on the part of companies that we own. There's nothing but a generic reference to our other assets and companies. So we know that your other companies exist, we just don't know which ones they are. We don't know whether they're represented by somebody that we'd be in conflict with or anything like that. But we know that there's companies, right? We know that there's assets and companies generally, yes. That they own. He didn't say they own. It wouldn't matter if they didn't own them. Or they didn't have a sufficiently controlling share of them. Well, that's true. But that's hence the problem with the amorphous email, just a general reference to our other assets and companies. It's too general. I understand your position. It makes perfect sense. I'm having trouble seeing why it's a legal issue as opposed to a factual issue. Because there isn't any, I don't want to use my rebuttal time, but there's no evidence of a meeting of the minds. Thank you, Your Honor. Thank you, Counsel. Good morning, and may it please the Court. My name is Jeff Goulder, appearing on behalf of the plaintiffs. I agree with Counsel that the issues before us today are narrow. With respect to the appeal, there is one, and that is viewing the evidence and the like most favorable to the plaintiffs. Could reasonable minds at least differ as to whether there was an attorney-client relationship between the firm and SSL? The answer to that clearly is yes, reasonable minds could at least differ. Why? I mean, why don't you have an obligation at the very least when you go to your attorney to inform your attorney who you want represented? Mr. Chaffee told the law firm that the firm was to represent the companies. Mr. Chaffee did not identify SSL assets as one of the companies for one reason, and one reason only, and that's because the controlled group liability test was never explained to him. The Jaffe firm never asked the right questions. I'm sorry, maybe I missed it. Where did he say, I want the companies represented? He said it in the email, but not only the email, Judge Tappara. I'm talking about the email where he says, we want to be sure that we aren't personally liable or put our other assets and companies at risk. But he doesn't say, I want them to be represented. He says, I want to make sure I don't put my assets or companies at risk. So, for example, if I say I want you to write me a trust because I want the money to get to my children versus someone else, and you write a deficient trust, who are you representing when you write the trust? Are you representing everyone I want to get money to? So what if I want a distant relative to get, I don't know, my wedding ring? Are you representing them as well? I think you do owe a duty to them. Well, you don't answer his question. Are you representing them is the question. You can owe a duty to somebody who, I don't know, has a lawyer that you're in conflict with, but you can't represent such a person, is that right? I think if it is clear that the legal advice is for an identifiable group, then there is an attorney-client relationship. Just like your client wanted your companies protected, I want my children and relatives and distant relatives to get the $3 I have. And you write a trust for me so that happens. Are you representing the person down the line? Yes. And look at it this way. Even though you don't know their names? Yes. How do you avoid conflicts if that's the case? How do you avoid the conflicts, Judge Rogers? You do what the Jaffe firm failed to do here, and that's ask the questions. But in the trust situation that you've just said you represent everyone, what if I say, am my grandchildren not yet born? So you represent people you could never know the names potentially. And then 20 years down the road, one of my grandchildren sues someone else, and you represent the other person. Now you've put the attorney in an awful bind. Judge Thapar, your hypothetical lays out facts that are markedly different than the facts that we have here. Here we had existing companies, an identifiable set. The testimony of the standard of care expert here was, if I received that email and he said protect my companies, then I, being the expert, said I would consider my client to be the companies. And there's no doubt that the Jaffe firm understood who its client was. And it's not just the email that we've been talking about. It's also follow-up correspondence between the parties. For example, and these are in the appendix that we submitted. At appendix page 21, there is the email between Mr. Weiss from the Jaffe firm and Mr. Jaffe, and this is two days before the transaction closed, where Mr. Weiss writes we should go ahead and execute the agreement, close the transaction, and he says this. He says personal liability is limited by the existing structure. And then he says ownership of the holding companies avoids any controlled group issues. So he understood the distinction between the personal interests and the companies. And, in fact, if Mr. Weiss had thought for a moment that the only client here was the individuals and the issue is controlled group liability, what he would have said is, by statute, controlled group liability can't attach to individuals. It only attaches to trades or businesses. So you don't need our advice. Have a nice day. One other document. I'm sorry, Ron? You represent SSL, right? I do. What if SSL had another lawyer at the time? So then they would just have two lawyers? Is that the idea? Yes. It just seems like a reasonable jury might say that you were a client because of this duty idea that at least one lawyer testified to, but a reasonable juror might not know the legal subtleties of what that means. So there may be some possibility that they in effect made a legal error because of the way in which engagement, the consequences of what engagement of an attorney are. And you can have a, and I think this is what Judge Tappar was aiming towards in his questions, is that you can have, you conceptually can have a legal duty to someone that you don't represent. That's a subtle thing for a jury to grasp. It's not subtle for us to grasp. We're lawyers. And the consequences of letting a jury come to the conclusion that those are the same thing is problematic. But whose responsibility is it to clarify? It's clearly the lawyer's responsibility to clarify. Wouldn't it be an incredible trick for a law firm to be able to raise its own negligence, its negligence in failing to ask the right questions, as a defense to its negligence in failing to give the right advice? That's what the Jaffe firm is asking this court to conclude. It turns the concept of negligence completely upside down. And, Judge Rogers, one other point. I was talking about the documents that reflect what the parties were thinking, and it's the other document I'd ask the court to consider is at appendix page 39. This is now an email that comes after the transaction closed, and it is again from Mr. Weiss to Jaffe, and he says you are correct that LSI, the company they bought, is not part of a controlled group with COBE or any other entity. He understands at least the very basics of controlled group liability, and he understands that controlled group liability can only attach to other entities. It can't attach to persons. That could be. All could be very true and still consistent with not having SSL be a client. You could just say that the stakes are big, not only for your client, but also for these people that we control that are not your client, because they have separate lawyers. They didn't say any of all of that, but that could be true. But how is it possible, if we put ourselves in the positions of business people, Cohen and Jaffe here, they don't know how this test works. I'm saying apart from the test. We're just talking about who's represented, not who's right on the issue. We could say, if I do this, those people will lose money. I want to know whether they in fact will lose money, those other people. If I had said when I came to you, you're only representing you and me, not these other companies, but I want to know whether those other companies are going to gain or lose money if I do X. You advise me, and I go one way or the other because I'm sympathetic for those companies. They're run by my sister-in-law, and I don't want to hurt them. So I ask you, how is that going to affect them? But I'm not asking you to represent them. This is a hypothetical. That could happen, even though there's all this negligence about control group responsibility. That's the issue that he's asking about. That's not who's being represented. Do you see what I'm asking? Well, I think I do, Judge Rogers, but it seems to be no answer. Pardon me for interrupting, but it's no answer to that to say, well, he didn't understand about control group liability. It's a question that assumes he doesn't know about that. But what the court, if I'm understanding you, seems to be driving at is, why didn't Cohen and Chafee specifically identify SSL assets and say, you're going to be representing SSL assets, not just the companies, but that particular company? And my point is, they surely would have done that had they been told what the test was, but because they were never told, how could they know? That's a key point that you make that I don't follow. If you can explain why that's true, then you have a compelling case. But if you can't, then I'm … Why it's true that they didn't know to mention SSL assets? Why that controls whether they're a client or not. I gave you an example where they have the identical question, the identical ignorance, the identical problem of raising all of that for purposes of whether there's control group liability, but they make very clear one way or the other whether SSL is a client or not, which they could have done and still had that question because they refer to other companies. They could have said, hypothetically, they could have said, point one, SSL has their own lawyer. I'm not asking you to represent SSL. Point two, I want to find out whether all my companies are control group and all of that ignorance and all of those problems. That's what I'm asking about. Why couldn't you have – I'm not saying that was the case. I'm saying could that be the case? Could it conceptually be the case? It is the case that they said, represent our companies. That's my hypothetical. I'm sorry, Judge Rogers. Do you want me to try it again? Please. I'm sorry. I'm missing you. You come in, you're completely confused about what you should know, what questions to ask, and so forth. But you make very clear that I only want you to represent me. You can't be representing SSL. They have their own lawyer. You're not representing them. In that situation, you would say they're not your lawyer, right? Even though there's all of this stuff that you're telling me about, how they're confused about the nature of the control test. So I say, how can that be that such a person would become their lawyer? You say that they don't. Why isn't that this situation? Because in your hypothetical, you said that the client said, I don't want you to represent that company. I understand that. But your answer is, not that, but because there was all this confusion about the nature of the control test. That's what I'm understanding your answer to. What I'm saying is this. Your hypothetical was the client says to the lawyer, you don't represent that entity. In this case, the client said to the lawyer, you do represent our companies. Well, he didn't exactly say that. He said, I have this question about the company. He said, protect our assets and companies. But he didn't say represent. In my hypothetical, he wanted to protect them as well. All right. Again, if a client comes to a lawyer and says, protect these companies, the testimony in the record is from the standard of care expert. That means my clients are the companies. And if the lawyer wants to narrow it. If you say protect the companies, back to Judge Rogers' example, I imagine, and you can tell me I'm wrong, but the big companies all the time get lawyers to protect their subsidiaries. But you don't represent the subsidiaries in doing so. You may owe a fiduciary duty to them. You may owe liability to the ultimate holding company or whatever it is that you represent. But you don't protect all, just by, I mean, you don't represent all the subsidiaries just by someone saying protect them. If the assignment is protect our subsidiaries, and the lawyer doesn't clarify and does the legal work and accepts payment for it, then I think he does. Why is it, I mean, I don't understand. So why, where does it come from? What's the best case for it's the lawyer's duty to clarify versus the person's duty to ask that you represent them? I understand the logic of that, but I don't understand where it comes, like where's the law for that? On whose duty it is. Your Honor, I don't recall that we even cited a case, because we have the testimony, of course, from the expert. No, I'm asking for a case, though there's no case, right, as to whose obligation it is to clarify. I understand your argument, but there's no case. I don't recall that that was even a challenged point, and so therefore I don't think we even cited cases. I think it's in the ethical rules. Of course, it's the lawyer's obligation, and in this case it was the firm policy to do engagement letters, which Mr. Weiss never did do. Mr. Weiss, in addition to that, said, yes, I owe duties to these entities. Your best argument is, look, had they done what ordinary attorneys do, we would know this, and you shouldn't reward that, because then you're simply going to reward negligence. I do agree with that statement. Okay. Any other questions? Thank you very much, counsel. Thank you. No one ever said to Weiss that he was to represent SSL. SSL was never even identified to anybody until after the closing. Weiss actually was given a chart by plaintiffs that didn't include SSL. He had no reason to think that there was some sister company out there. Do you have a case holding the opposite, that it's the client's duty to make clear exactly who's being represented? Because it seems to me there's some logic to your friend's argument that, look, you're rewarding the negligence of a law firm. My slight practice in law firms, we always sent engagement letters. I mean, that would have made this a non-issue. Well, it would have made it a non-issue if they would have just identified SSL, which is one of only two. So my question is, do you have a case that says this is a legal thing versus a factual thing that was properly left to the jury? Do you have a case saying it's their duty? I don't have a case that says it's their duty, but I do have a case that says there has to be a meeting of the minds between a lawyer and an attorney. That sounds like a factual question to me. There cannot be a meeting of the minds with someone that the lawyer doesn't know exists. There's no suggestion that there was. My college son, you still haven't answered that. Right. I don't think that the lawyer would represent a family member that it doesn't know about. I want you to represent me and my family. The lawyer never asks who's in my family. You're saying you don't represent it. I'm saying if the lawyer assumes certain family members exist and knows about them, but there's another one that he doesn't. How do I know that? Wait a minute. I go into a lawyer's office, I say, I want you to represent me and my family. I'm a layperson. You say, okay. I have a son in college. You don't know about it. You're saying you don't represent him because you don't know and you never ask the question. I'm saying that might be a fact question because, for example, family, does it refer to your close family or does it refer to your cousins? I don't know. Whose obligation is it to make clear? I'm not sure. But what I am sure about is that there has to be a meeting of the minds, and that's the key here. Their own expert, the standard of care that Mr. Goulart talked about, admitted that there has to be a bilateral agreement between the lawyer and the entity. He admitted that. He also admitted that the mere fact that a lawyer has been asked to look into control group issues does not mean he represents anyone that might be part of the group. And that torpedoes their entire argument because that's all their argument is based on. Their argument is we want you to represent us and also to protect our other assets and companies. Under their argument, if he had just a small percentage ownership in some companies, say Stock and GM, they would be their client. They would be their client. What he's saying is if the lawyer doesn't find out who they are, then a client relationship springs into existence between the lawyer and that entity. And that can't be. That can't possibly be. It might be, Judge Thapar, assuming that he's right, that it's the lawyer's duty to look into this, even though he doesn't cite a case that says so. It might conceivably be a breach of the duty owed to him, his client. But the breach of the duty to find the other entity can't possibly be held to spring a client relationship into existence because there still can't be a meeting of the minds. And that's what the judge did here. The mistake the judge made was he thought there was an implied contract by virtue of Weiss's failure to find SSL. But the failure to find SSL doesn't result in an implication. That doesn't suggest that Weiss actually may have known and may have had a meeting of the minds with SSL because we know he didn't. And once we know he didn't, because it's an undisputed fact that he didn't know about SSL, there can't be an attorney-client relationship, either actual or implied meeting of the minds. We know that it can't exist, which is why we're entitled to judgment as a matter of law. I see my time is almost up. I'd love to answer any other questions if the Court has any, but otherwise I have none. Thank you, counsel. Your case will be submitted. Please call the next case.